UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2007 JUN -1 A 11: 31

U.S. DISTRICT COURT
BRIDGEPORT, CONN

| | |
|---|---|
| CAROL MORRIS<br>Plaintiff, | |
| v. | CIVIL ACTION NO.<br>3-05-cv-305 (JCH) |
| VIKING POOLS NORTHEAST,<br>INC.<br>Defendants. | June 1, 2007 |

# RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 30)

Plaintiff Carol Morris, brings this action against the defendant, Viking Pools Northeast, Inc. ("Viking"), asserting a product liability claim under the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Stat. §§ 52-572m et seq., and a claim under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a et seq. for damages allegedly sustained by the plaintiff resulting from the defective design, manufacturing, and installation of a below-ground swimming pool. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity among the parties and the amount in controversy exceeds $75,000.00.

Viking has moved for summary judgment on both of Morris's claims for relief pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, Viking's motion for summary judgment (Doc. No. 30) is granted in part and denied in part.

## I. STANDARD OF REVIEW

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is

entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## II. BACKGROUND

Morris is a resident of East Hampton, Connecticut. Viking is a West Virginia corporation with its principal place of business in West Virginia.

In May 2000, Morris purchased an in-ground, fiberglass swimming pool manufactured by Viking from Clearwater Pools & Spas Casual Living Center ("Clearwater"). Clearwater's installation crew delivered the pool to Morris's home in June of 2000; however, the crew did not install the pool at that time. At some point after the pool's delivery, Clearwater informed Morris that its installation crew had quit. Morris Aff. ¶ 11. Morris then contacted Viking to demand that Viking remove the pool

2

from her yard and refund her money. Id. at ¶ 12. After inquiring from whom Morris purchased the pool, a Viking representative informed Morris that Viking would directly supervise the installation of her pool. Id. at ¶ 13. Morris's pool was finally installed in November 2000.

In May 2004, the plaintiff, after uncovering her pool, discovered that there was a crack and hole in the bottom of the pool. Because of the crack, the pool would no longer held water.

## III. DISCUSSION

Viking challenges both Morris's CPLA and CUTPA claims on the bases that Morris's expert on pool manufacturing and installation, James Erksine, does not establish a causal link between the pool's installation and Morris's claimed damages, or between the pool's alleged defect and Morris's claimed damages. Viking also asserts that Morris's CUTPA claim fails due to the exclusivity provisions of the CPLA. The court addresses these arguments in turn.

### A. Morris's CPLA Claims

Morris's claims under the CPLA are, in essence, that Viking is strictly liable for property damage resulting from the pool's defective condition, that Viking was negligent in the installation of the pool, and that Viking breached various express and implied warranties with regards to the manufacturing and installation of the pool. To prevail on these theories under the CPLA, Morris must establish that:

> (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and

3

did reach the consumer without substantial change in condition.

Potter v. Chicago Pneumatic Tool, Co., 241 Conn. 199, 214 (1997) (quoting Giglio v. Connecticut Light & Power Co., 180 Conn. 230, 234, 429 A.2d 486 (1980) (internal citations omitted). Only the second and third prongs of the CPLA test are relevant to the pending motion.

Viking challenges Morris's installation theory on the ground that Morris has not come forward with expert testimony establishing that Viking negligently installed Morris's pool. Viking challenges Morris's product defect theory on the ground that Morris offers no expert testimony linking the alleged defect to Morris's claimed damages. With respect to Morris's implied and express warranties theory, Viking asserts that these claims fail because Morris cannot establish that the pool's alleged defect or improper installation caused her injury. Because Viking's arguments for dismissing Morris's warranty theory depend entirely on its arguments opposing Morris's product defect and negligent installation theories, the court need only address Morris's product defect and negligent installation theories.

1. Negligent Installation

Viking first asserts that Morris has not created a material issue of fact as to whether Viking negligently installed her pool because Erksine did not render any opinions as to the pool's installation. While it is true that Erksine offered no opinions as to whether Viking negligently installed Morris's pool, Erksine Depo. at 68-69, Morris has come forward with evidence that Viking was responsible for the negligent installation of Morris's pool. In a June 4, 2004 letter, Thomas Marion, a General Manager for Viking,

4

informed Morris of Viking's conclusion that "the problem associated with the pool was caused by improper installation techniques." Marion Letter. Morris has also introduced evidence that a Viking representative was present at Morris's home when her pool was installed. Austin Depo. at 61-61; Flammia Depo. at 31. Based on this evidence, the court concludes that Morris has created a material issue of fact as to whether Viking negligently installed her pool. Viking's motion for summary judgment on this ground is therefore denied.

### 2. Defective Condition

Next, Viking argues that, although Erksine determined that Viking manufactured Morris's pool without a final coating of "Rovel woven fiber," Morris's claim fails because Erksine could not establish to a reasonable certainty that this potential defect caused the pool to crack and, subsequently, to leak.

In his deposition, Erksine clearly states his opinion that the Viking pool experienced a structural failure due the lack of a final coating of Rovel woven fiber. Erksine Depo. at 47. Erksine does admit, as Viking notes, that the pool' structural failure may not have caused the pool to leak and, indeed, that the structural failure may have occurred after the leak. Id. at 71. However, Erksine also opined that the crack in the pool could have caused the leak. Id. at 72. More importantly, Morris's claims for recovery are not limited simply to those damages resulting from the leaking of her pool. To the contrary, Morris's claims regarding the damages caused by the pool's defect relate generally to "property damage, including but not limited to, removing the defective pool and concrete patio, installing a new pool and concrete patio, and repairing the stone retaining wall and replacing damaged landscaping." Compl. ¶ 30 (First Count).

Thus,

Given the nature of Morris's allegations, Erksine's testimony that the Viking pool's structural defect caused the pool to crack speaks directly to Morris's claimed damages. Consequently, the court finds that Erksine's testimony does not amount to conjecture or speculation on whether the alleged defect caused Morris's damages. See Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996). The court consequently finds that Morris has created a material issue of fact as to whether a structural defect in her pool caused her claimed damages. Viking's motion for summary judgment on this ground is therefore denied.

### B. Morris's CUTPA Claims

Viking's arguments concerning Morris's lack of causation with respect to her CUTPA claims mirror its arguments with respect to Morris's CPLA claim. Because the court has already rejected these arguments, the court need only address Viking's assertion that Morris's CUTPA claim is barred by the CPLA's exclusivity provision.

The CPLA provides that, "[a] product liability claim . . . may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." Conn. Gen.Stat. § 52-572n(a). A product liability claim includes "all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product." Conn. Gen.Stat. § 52-572m(b). Addressing the extent to which plaintiffs may bring claims under both the CPLA and CUTPA, the

Connecticut Supreme Court held that where "the plaintiff's underlying complaint reveals that a particular CUTPA claim alleged . . . reasonably can be construed to be outside the scope of the product liability act, the CUTPA claim is not barred . . . ." Gerrity v. R.J. Reynolds Tobacco Co., 263 Conn. 120, 124 (2003).

Morris's CUTPA claim seeks damages for the loss of:

> (1) [the] use of her money that she overpaid for the pool she believed was guaranteed; (2) [the] use and enjoyment of her pool since May 22, 2004; and (3) her ability to make a claim against the Home Improvement Guarantee Fund, pursuant to Connecticut General Statutes § 20-432, because the Defendant's authorized dealer was not properly licensed in the State of Connecticut.

Compl. ¶ 35 (Second Count).

The court finds that Morris's CUTPA damages related to the money she paid for Viking's faulty guaranty are not barred by the CPLA, since this would "redress merely a *financial injury*" that she suffered. Gerrity 263 Conn. at 130 (finding CUTPA claim that plaintiff had to pay a higher price for product due to defendant's wrongful conduct was not barred by CPLA). By contrast, Morris's CUTPA damages stemming from the loss of use and enjoyment of her pool are barred by the CPLA, as this injury indisputably results from the construction and installation of her pool. See Johannsen v. Zimmer, Inc., 2005 WL 756509 at *9 (D.Conn. 2005) (holding that claim for personal injuries caused by product defect are barred by CPLA).

Morris's third damages claim presents a more difficult question. Under Conn. Gen. Stat. § 20-432, "[w]henever an owner obtains a court judgment against any contractor holding a certificate . . . for loss or damages sustained by reason of performance of . . . a home improvement . . . such owner may . . . apply to the

7

commissioner for an order directing payment out of said guaranty fund . . . ." Conn. Gen. Stat. § 20-432 (d). The basis for Morris's claim under Conn. Gen. Stat. § 20-432 is that Viking misled Morris into believing that Viking required its dealers to meet certain qualifications before they could install Viking products. Because Clearwater was not, in fact, licensed by the State of Connecticut to install underground swimming pools, Morris asserts that she has lost the ability to bring a claim against the Fund for her injuries.

According to Viking, the CPLA bars Morris's claims because, "[a]ssuming that Clearwater had been licensed, Plaintiff's remedies against it would have been brought under the CPLA for property damage she sustained because her swimming pool leaked." Viking Reply at 5. The court disagrees. Looking to the Complaint, Morris defines her injury here as the inability to bring a particular type of claim, not Clearwater's negligent installation of her pool. Morris inability to bring a claim against Fund for Clearwater's negligence was not caused by her defective pool; it was caused by Viking's alleged representations that its dealers would be properly licensed. The right to bring such a claim would seem to have a value similar to an assurance of product safety, in that a consumer may be willing to pay more to secure the benefit in question. Where a manufacturer wrongfully induces a consumer to pay a higher price for a given product with a representation that, in exchange for the higher price, the consumer is gaining a particular, added benefit, a claim seeking relief for the financial injury resulting from the manufacturer's misrepresentation is outside the scope of the CPLA. Cf. Gerrity 263 Conn. at 129-30. The court therefore finds that the CPLA does not bar Morris's CUTPA claim for damages arising from her inability to bring a claim against the Fund.

## IV. CONCLUSION

For the foregoing reasons, Viking's Motion for Summary Judgment (Doc. No. 30) is GRANTED in part and DENIED in part. It is GRANTED as to Morris's CUTPA claim for damages stemming from the lost use and enjoyment of her pool. It is DENIED in all other respects.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 1st day of June, 2007.

/s/ Janet C. Hall
United States District Judge